**In re Benny Paul VALDEZ and Patricia Ann Valdez, Debtors.**

No. 05–34490.

United States Bankruptcy Court, N.D. California.

March 8, 2006.

Cathleen Cooper Moran, Moran Law Group, Mountain View, CA, for Debtors.

Jenifer K. Gardella, Law Offices of Gardella and Gardella, Redwood City, CA, for Creditor.

## OPINION

THOMAS E. CARLSON, Bankruptcy Judge.

At issue in this proceeding is how to measure the value of a secured claim against Debtors' mobilehome. Both parties agree that the value of the property on site in the mobilehome park is much greater than the value of the "box" alone. Debtors gave the creditor a security interest in the mobilehome itself, but not in any leasehold in the mobilehome park. I determine that the in-place value controls. Under California law, a creditor with a security interest in the mobilehome "box" has a right to sell the property in place upon the debtor's default, whether or not that creditor has a security interest in the mobilehome park leasehold.

FACTS

Debtors purchased the mobilehome in question from Ruth Schoephoerster in June 2003 for $45,000. They gave Schoephoerster a promissory note in the amount of $40,500 secured by a properly perfected security interest in the mobilehome. The balance on the note is currently $36,587.80, plus some accrued interest. When Debtors purchased the property, it was already in its current location at a mobilehome park in Redwood City, California.

Debtors filed a chapter 13 petition in October 2005. Their amended chapter 13 plan values Schoephoerster's secured claim at $15,000. There is no dispute that the mobilehome would have a "box value" of $16,500 if it were on a storage lot. There is also no dispute that the property has a value of $40,000 in its current location at an operating mobilehome park. Debtors contend that Schoephoerster's security interest attaches only to the mobilehome itself, and that the value of her secured claim is equal to the "box value" rather than the in-place value of the collateral.

DISCUSSION

Mobilehome parks in California are highly regulated under the Mobilehome Residency Law, California Civil Code §§ 798–799.7. Under this Law, many lease terms normally left to the discretion of the contracting parties' intent are prescribed by statute. Cal. Civ.Code §§ 798.15–798.22. The California Legislature made an express finding that because of the high cost of moving mobilehomes, "the owners of mobilehomes occupied within mobilehome parks [must] be provided with the unique protection from actual or constructive eviction afforded by the provisions of this chapter." *Id.* § 798.55(a). Thus, owners are entitled a lengthy notice period and a lengthy period to cure any default before a tenancy may be terminated. *Id.* § 798.55(b).

Four other features of the Mobilehome Residency Law are relevant to this proceeding.

First, the "owners" of mobilehomes entitled to the protections of this Law include secured lenders such as Schoephoerster. Such a creditor is referred to as the "legal owner." *Id.* § 798.56(e)(3); Cal. Health & Safety Code § 18005.8. When a mobile-

home park proposes to terminate a tenancy, it must give notice to the legal owner. The legal owner can then: (1) sell its note to the mobilehome park; (2) foreclose, cure the tenancy default, and sell the property at its current location; or (3) advise the mobilehome park to terminate the tenancy, cure the tenancy default, and sell the mobilehome. Cal. Civ.Code § 798.56a.

Second, the provisions of the Law governing mobilehome owners' rights to sell their property expressly afford a legal owner who forecloses the right to sell its collateral with the right to remain in the mobilehome park. Section § 798.79(a) provides, in relevant part:

> Any legal owner or junior lienholder who forecloses on his or her security interest in a mobilehome located in a mobilehome park shall have the right to sell the mobilehome within the park to a third party . . . .

Third, the purchaser of a mobilehome located in a mobilehome park has the right to reside in that park, if willing to execute a rental agreement and able to satisfy a credit check. *Id.* §§ 798.74, 798.75. The mobilehome park can require that certain types of repairs be effected upon sale, but there is no evidence that the property in question is subject to this requirement or that the mobilehome park would invoke that power. *Id.* §§ 798.73, 798.73.5.

Fourth, nothing in the Law requires the legal owner to compensate the mobilehome owner for any value of the leasehold when the legal owner forecloses and sells the mobilehome in place to a third party. Nor does the Law enable the mobilehome owner to transfer any leasehold right apart from the sale of the mobilehome. Indeed, the Law expressly denies the mobilehome owner one of the important rights a tenant normally enjoys—the right to sublease at a rent higher than the rent under the primary lease.

A homeowner may not charge a renter or sublessee more than an amount necessary to cover the cost of space rent, utilities, and scheduled loan payments on the mobilehome, if any.

*Id.* § 798.23.5(c).

CONCLUSION

It thus appears that unless Debtors pay the note in full, Schoephoerster has a statutory right to sell Debtors' mobilehome at its current location within the mobilehome park and to keep all proceeds from that sale. Because this right arises by statute, it does not depend upon Schoephoerster's having a perfected security interest in any leasehold. Because Schoephoerster's rights in the collateral under state law include its value in place in the mobilehome park, I determine that the value of the collateral for the purpose of fixing the amount of Schoephoerster's secured claim under 11 U.S.C. § 506 is the property's in-place value of $40,000.